{¶ 41} Although I concur in the majority's disposition of the cross-assignment of error, I respectfully dissent from the majority's disposition of the assignment of error of Phillip Morris because the plaintiffs did not establish that there had been a prior determination, within the meaning of R.C.1345.09(B), that the alleged conduct of Phillip Morris violated the Consumer Sales Practices Act. "For class certification to be proper, the prior decision or previously promulgated rule must have put the defendant on notice that the specific conduct at issue violated the Sales Act." Delahunt v. CytodyneTechnologies (S.D.Ohio 2003), 241 F.Supp.2d 827, 837. This Court has also held that the requisite determination under R.C.1345.09(B) must declare that the specific acts alleged by the plaintiffs constituted unfair or deceptive practices prior to the time that the defendant allegedly committed the acts. See Crowv. Fred Martin Motor Co., 9th Dist. No. 21128, 2003-Ohio-1293, citing Estate of Cattano v. High Touch Homes, Inc., 6th Dist. No. E-01-022, 2002-Ohio-2631, at ¶ 57.
 {¶ 42} I disagree with the majority that the cases cited by Phillip Morris constituted prior determinations that the specific acts alleged by the plaintiffs were deceptive acts under the Consumer Sales Practices Act. None of these cases involved the same types of acts alleged by the plaintiffs but instead involved entirely different types of representations. To read these cases as broadly as the majority suggests and "without reference to the specific acts in those cases would allow the recovery of treble damages [or a class action] * * * whenever there is any arguable misstatement of fact, a result the Ohio courts and legislature surely did not intend." Lewis v. ACB Business Servs. (C.A.6, 1998), 135 F.3d 389, 405. These cases did not put Phillip Morris on notice that the specific acts alleged in the plaintiffs' complaint constituted violations of the Consumer Sales Practices Act.
 {¶ 43} The plaintiffs also asserted below, and contend again on appeal, that two administrative code sections, Ohio Adm. Code109:4-3-02 and 109:4-3-10, set forth the requisite prior determinations that the acts allegedly committed by Phillip Morris constituted deceptive or unfair practices. Ohio Adm. Code109:4-3-02(A)(1) provides, in pertinent part:
"It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations,modifications, or conditions." (Emphasis added.)
 {¶ 44} Ohio Adm. Code 109:4-3-10(A) provides that it shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:
"Make any representations, claims, or assertions of fact
* * * which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact[.]" (Emphasis added.)
 {¶ 45} The parties dispute whether these administrative rules constituted prior determinations that the alleged conduct of Phillip Morris was in violation of the Consumer Sales Practices Act. Although other courts have held that these general administrative rules may constitute prior determinations that particular conduct constituted a violation of the Act, the plaintiffs must allege conduct by the defendant that clearly falls within these provisions. See, e.g., Delahunt,241 F.Supp.2d at 838 (the plaintiffs alleged that defendant represented that product contained a specific amount of ephedrine but the defendant had no basis in fact to support that representation); Amato v. General Motors Corp. (1982),11 Ohio App.3d 124 (the plaintiffs alleged that the defendant had materially modified the vehicle it sold by replacing the G.M. motor with a Chevrolet motor but did not disclose that modification to the plaintiff).
 {¶ 46} Assuming, without deciding, that Ohio Adm. Code109:4-3-02 and 109:4-3-10 could constitute prior determinations, within the meaning of R.C. 1345.09(B), the plaintiffs in this case failed to allege any conduct by Phillip Morris that would fall within the plain language of these administrative rules. The plaintiffs did not allege any specific facts that would constitute "material exclusions, reservations, limitations, modifications, or conditions," see Ohio Adm. Code109:4-3-02(A)(1), in the advertising of the Light cigarettes, nor did they allege any facts that would constitute "representations, claims, or assertions of fact" that were not based on data to substantiate them. See Ohio Adm. Code 109:4-3-10(A).
 {¶ 47} The specific acts that the plaintiffs did allege in this case did not fit within either of the above administrative provisions. The plaintiffs alleged that Phillip Morris failed to fully disclose to consumers every way in which its Light cigarettes differed from its regular cigarettes, and they contended that Phillip Morris's development of Light cigarettes was a "material * * * modification" of its regular cigarettes and the failure of Phillip Morris to fully disclose every one of those changes constituted a deceptive act under Ohio Adm. Code 109-4-3-02(A)(1).
 {¶ 48} The plaintiffs cited no authority, and this author knows of none, that would support applying this administrative provision to the product changes that are made when a manufacturer develops a new product and identifies it to the consumer as such. Ohio Adm. Code 109:4-3-02(A)(1) is clearly intended to require disclosures when modifications or limitations are made to existing sales offers that the consumer would not otherwise be aware of. Ohio Adm. Code 109:4-3-02(A)(2) lists some specific examples of the "types of material exclusions, reservations, limitations, modifications, or conditions of offers" that must be disclosed to consumers and those examples include failing to disclose hidden additional charges, that the offer may apply only at certain outlets of the supplier or on certain days or during certain hours, that the price includes a trade-in, or that a minimum amount must be purchased to get the advertised price. I would not extend the language of Ohio Adm. Code 109-4-3-02(A), as a matter of law, to a manufacturer's marketing of a completely new product that was explicitly identified to the consumer as such. Therefore, Ohio Adm. Code 109-4-3-02(A) could not qualify as a prior determination that the alleged acts of Phillip Morris constituted deceptive acts or practices under the Consumer Sales Practices Act.
 {¶ 49} The facts alleged by the plaintiffs likewise failed to fall within Ohio Adm. Code 109:4-3-10(A). The plaintiffs did not allege that Phillip Morris represented the Light cigarettes to deliver lowered tar and nicotine and that it had no data to substantiate those claims. Instead, the plaintiffs conceded that testing was done, but allege that the test results were not accurate because the machine did not smoke the cigarettes in the same manner that many humans do. The plaintiffs alleged that Phillip Morris marketed its Light cigarettes to consumers and represented them as delivering lower tar and nicotine than its regular cigarettes, even though it knew that, due to the manner in which some consumers would smoke the cigarettes (i.e., by covering the vent holes or by inhaling deeper or more frequently), these consumers would not actually consume less tar and nicotine and might even consume more harmful ingredients.
 {¶ 50} Many of the plaintiffs' allegations are more in the nature of an attack on the design of the cigarettes, such as the placement of the vent holes, and on the failure of Phillip Morris to fully educate consumers about the tendency of some smokers to smoke differently to compensate for the filter reducing their intake of tar and nicotine. Those allegations do not constitute conduct that falls within either Ohio Adm. Code 109:4-3-02(A)(1) or 109:4-3-10(A).
 {¶ 51} The plaintiffs failed to demonstrate that there was a prior determination, within the meaning of R.C. 1345.09(B), that the alleged conduct of Phillip Morris constituted a deceptive act or practice, a threshold requirement for maintaining a class action under the Consumer Sales Practices Act. Therefore, I would hold that the trial court erred in certifying the class and would sustain the error that Phillip Morris assigned.